UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 2:22-cr-67-SPC-KCD

MARVIN HARRIS, JR.

### ORDER[1]

Before the Court is Defendant Marvin Harris, Jr.'s Motion for Recusal (Doc. 58), and the Government's Response in Opposition (Doc. 65). The Court denies Harris' motion.

### BACKGROUND

This is Harris' second criminal case before the undersigned. This fact, and certain surrounding circumstances of Harris' previous case, prompt his recusal motion. Below are the relevant, undisputed facts taken from the parties' papers.

In Harris' previous case (Case No. 2:20-cr-00134-SPC-NPM) ("2020 case"), Harris pled—and was adjudicated—guilty of knowingly and willfully conspiring to distribute, and possessing with intent to distribute, a controlled substance. The undersigned sentenced Harris and his co-defendants in the

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

2020 case. At his sentencing, Harris had no objections to the presentence report. According to the presentence report, Harris was the organizer and leader of a drug ring distributing crack cocaine and fentanyl in Fort Myers, Florida. Harris received an enhancement for being the organizer or leader of the criminal activity. Harris addressed the Court and spoke of the damage he had caused the community and the damage and harm drugs can do. The Court sentenced Harris within the guidelines.

In making required factual findings at sentencing[2], the undersigned found Harris was the leader of the organization and had directed others how to act. The undersigned spoke generally about the negative effects of selling drugs stating, "It's also clear what happens when people sell drugs, especially now with fentanyl running rampant, that people also die as a result. And that is something that has to be considered."[3]

Following Harris' sentencing, Harris' mother emailed the undersigned. Her email stated:

---

[2] *See* 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence…").

[3] Harris believes this comment was made about Zachary Munch, and that Zachary Munch's death was inappropriately attributed to him in sentencing. Zachary Munch was a young man discussed in Harris' presentence report (which Harris did not object to) as someone who died of a suspected drug overdose two days after arranging a drug transaction with Harris. The undersigned did not make any findings related to Zachary Munch's death at Harris' sentencing hearing nor at Molina's, neither Harris nor Molina received the statutory enhanced penalties for causing a death in a drug case, neither received the higher base offense levels possible for causing a death in a drug case, and neither received an upward departure from the guidelines for causing a death.

> I was going to start this message off with Your Honor, but what about you is honorable? You sentenced my son Marvin Harris yesterday. You slammed that gavel down with such delight knowing you were breaking down a young black man. Had he been white, he would have gotten 1-2 years and probation. I always wondered what goes through a racist and hateful persons [sic] mind at night. How do they sleep comfortably being that type of person? Always remember you will be judged one day before God. You will have to be held accountable for all the men and women you oversentenced solely because for their skin commplexion [sic]. May God have mercy on you.

The Court did not respond to the email. And nothing indicated Harris had any involvement in the email.

Besides sentencing Harris, the undersigned also sentenced his co-defendants in the 2020 case. Specifically mentioned in Harris' recusal motion is Destiny Molina, Harris' girlfriend and co-defendant. Molina also pled and was adjudicated guilty of knowingly and willfully conspiring to distribute, and possessing with intent to distribute, a controlled substance.

The undersigned also sentenced Molina. Like Harris, Molina did not object to the presentence report. The Government and Molina both requested a downward variance from the sentencing guidelines. The Government spoke of Molina's cooperation in the 2020 case and in an alleged murder case. The Government stated it may call Molina as a witness in the alleged murder case and, if it did, it may ask for additional credit for Molina. In sentencing Molina, the undersigned made required factual findings and discussed Molina's role— particularly compared to Harris' role—in the conspiracy. The undersigned

3

also said that should the Government make a future Rule 35 motion, she would consider it.

Here ("2022 case"), Harris was indicted for conspiring and causing another to travel in interstate commerce with the intent to murder another person. Harris moves for recusal under 28 U.S.C. §§ 144, 455(a), and 455(b)(1). He argues the factual findings made by the Court during his and Molina's sentencing hearings in the 2020 case and the email sent by his mother: (1) would cause a lay observer to entertain significant doubts about the undersigned's impartiality and (2) indicate a negative bias against Harris and a positive bias towards Molina, who may testify in this 2022 case. Harris also argues that the undersigned may be a defense impeachment witness given her presence at Molina's sentencing and the sentencings of several other potential Government witnesses involved in the 2020 case. Finally, Harris argues that presiding over these sentencings allowed the undersigned to obtain personal knowledge of disputed evidentiary facts, although Harris identifies no specific disputed facts.

## DISCUSSION

### A. A Preliminary Matter: Deciding or Referring the Motion Itself

As a preliminary matter, the Court must address whether it can rule on Harris' motion or if it must refer it to a different judge. Harris does not request the motion itself be referred. Rather, Harris seeks a ruling that the

4

undersigned recuse herself and the entire proceeding be reassigned. But the Government muddies the water, arguing Harris' motion should be denied but stating "because Harris appears to have cleared a threshold procedural requirement for submitting a recusal motion, the matter should be ruled upon by a judge not currently assigned to the case." (Doc. 65). No party cites caselaw regarding whether this motion itself must, or should, be referred to a different judge.

The Court finds it can, and should, rule on Defendant's recusal motion. The Government rests its position on Harris' submission of a *procedurally* proper affidavit. Under the Government's logic, any time a party submits a procedurally proper affidavit under 28 U.S.C. § 144, that motion must be heard by a different judge—regardless of the affidavit's substance. Not so. *See, e.g.*, *United States v. Gelin*, No. 21-11091, 2022 WL 10220112, at *2 (11th Cir. Oct. 18, 2022) (affirming denial of recusal motion under § 144 decided by same judge who was subject of motion); *Wood v. Frederick*, No. 21-12238, 2022 WL 1742953, at *1 (11th Cir. May 31, 2022) (same).

More than procedural checkmarks are required to trigger § 144's provision that a judge "proceed no further…" 28 U.S.C. § 144. The affidavit must also be "sufficient" in showing that the judge has "a personal bias or prejudice either against [the party seeking recusal] or in favor of an adverse party." *Id.*; *see also Wood*, 2022 WL 1742953, at *3 ("We strictly scrutinize

5

these affidavits [under § 144] for sufficiency because of the disruption and delay of the judicial processes that can be caused by the disqualification of a trial judge.") (cleaned up). And here the Government argues the affidavit is insufficient to show bias or prejudice. If it were, the entire proceeding must be reassigned, not just the recusal motion. 28 U.S.C. § 144.

Further, if there is no legitimate reason to recuse, a judge should preside over a case. A judge has *as strong* a duty to sit when there is no legitimate reason to recuse as she does to recuse when the law and facts require it. *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1501 (10th Cir. 1994); *United States v. Malmsberry*, 222 F. Supp. 2d 1345, 1349 (M.D. Fla. 2002).

Having decided the Court can, and should, rule on Defendant's recusal motion, the Court turns to the motion's substance.

### B. Recusal

Harris moves for recusal under two statutes: 28 U.S.C. §§ 144, 455(a), and 455(b)(1). Section 455 provides multiple bases for recusal, two of which are at issue. First, a judge must recuse when her "impartiality might be reasonably questioned." 28 U.S.C. § 455(a). "The test under Section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Chandler*, 996 F.2d 1073, 1104 (11th Cir. 1993) (citations omitted). Second, a judge must recuse when she "has a personal bias

6

or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455(b)(1). Next, Section 144 provides a single basis for recusal: that a judge has a "personal bias or prejudice" against the party moving for recusal or in favor of the adverse party. 28 U.S.C. § 144. Section 455(b)(1) encompasses § 144. *Liteky v. United States*, 510 U.S. 540, 548 (1994) ("[§ 455](b)(1) entirely duplicated the grounds of recusal set forth in § 144…").

So in considering recusal statutes against Harris' Motion, the Court must recuse if: (1) an objective, disinterested, lay observer fully informed of the facts would entertain a significant doubt about the undersigned's impartiality (§ 455(a)); or (2) the undersigned has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding (§§ 455(b)(1); 144).

Except for Harris' mother's email, Harris' recusal motion centers on the undersigned's judicial role in his 2020 sentencing and the sentencings of his 2020 co-defendants. This raises the "extrajudicial source" limitation. "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources. The exception is when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Isaac v. United States*, 809 F. App'x 595, 599 (11th Cir. 2020) (cleaned up); *see also Litekey*, 510 U.S. at 551 (finding a judge can be biased

7

from judicial sources only if his disposition is so extreme as to display clear inability to render fair judgment).

"[O]pinions held by judges as a result of what they learned in earlier proceedings are not subject to deprecatory characterization as 'bias' or 'prejudice'." *Litekey*, 510 U.S. at 551; *see also United States v. Gelin*, No. 21-11091, 2022 WL 10220112, at *2 (11th Cir. Oct. 18, 2022) (finding impartiality of the district court judge not reasonably questioned when recusal arguments were based solely on of judge's conduct and adverse rulings during criminal proceedings and not personal or extrajudicial sources); *Matthews v. State Farm Fire & Cas. Co.*, 817 F. App'x 731, 735 (11th Cir. 2020), *cert. denied sub nom. Matthews v. Becker*, 209 L. Ed. 2d 171, 141 S. Ct. 1449 (2021) ("Under either §§ 144 or 455, the nature of the alleged bias must be personal, rather than judicial."). This is because a judge will necessarily acquire opinions from presiding over past proceedings, but these opinions are properly acquired, and not grounds for recusal. *Litekey*, 510 U.S. at 550-51. "It has long been regarded as normal and proper for a judge to sit in . . . successive trials involving the same defendant." *Id.* at 550-51. So, playing a judicial role in past proceedings is not grounds for recusal unless the judge's resulting disposition or opinions are so extreme as to display clear inability to render fair judgment. *Id.* at 551.

The extrajudicial source limitation applies to 28 U.S.C. §§ 144, 455(a), and 455(b)(1) – all the ones applicable in Harris' motion. *Litekey*, 510 U.S. at

8


551-54 ("With this understanding of the 'extrajudicial source' limitation in §§ 144 and 455(b)(1), we turn to the question whether it appears in § 455(a)… [it] applies to § 455(a)").

Having reviewed and considered Harris' motion, recusal is not warranted from the undersigned's judicial role in the 2020 case. The Court's statements in both Harris' and Molina's sentencing hearings were required factual findings based on the uncontested presentence reports and are far from "so extreme as to display clear inability to render fair judgment." *Litekey*, 510 U.S. at 551.

Nor can the undersigned be an impeachment witness for any testimony Molina may give in this 2022 case. The undersigned has no personal knowledge of Molina's cooperation with the Government—the only knowledge the undersigned possesses is what the Government stated in open Court.

Finally, Harris' allegation that sentencing his 2020 co-defendants allowed the undersigned to gain personal knowledge of disputed evidentiary facts is impermissibly conclusory. There's no explanation of what facts or how any potential facts, if they exist, would constitute personal knowledge when they were learned in open court through the undersigned's judicial role in the 2020 case. Such an unsupported fear is not grounds for recusal. *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) ("a judge, having been

assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation").

The only extrajudicial source of alleged bias or prejudice is the email from Harris' mother.[4] The Court has no predisposition towards Harris because of his mother's communication nor could any reasonable person question the undersigned's impartiality or think the undersigned has any bias or prejudice against Harris. And here's why.

Nothing in the email indicates Harris had any involvement with it being written or sent. Harris even admits he was unaware his mother emailed until after it was sent. ([Doc. 58-1 at 2](#)). The Court did not attribute the email to Harris at his prior sentencing and the email will have no place in the Court's consideration of this latter action. What's more, an email is one-sided contact that only shows Harris' mother's opinion—not that of the undersigned. What matters for recusal is the undersigned's response to the email and there was none. Finally, it cannot be that whenever someone emails a judge with complaints, recusal is necessary. *See Matthews v. State Farm Fire & Cas. Co.*, 817 F. App'x 731, 736 (11th Cir. 2020), *cert. denied sub nom. Matthews v. Becker*, 209 L. Ed. 2d 171, 141 S. Ct. 1449 (2021) ("The mere filing of a

---

[4] The Government questions whether the email was even from Harris' mother. The sender identifies herself as Harris' mother, Harris claims it was sent by his mother, and the Government provides no evidence to the contrary. So the Court assumes the email was sent by Harris' mother for the purposes of this motion.

complaint of judicial misconduct is not grounds for recusal.") (cleaned up). This would allow anyone seeking a new judge to prevail by simply hitting send. *See United States v. Hillsberg*, 812 F.2d. 328, 335 (7th Cir. 1987) (rejecting argument that letter from mother was recusal basis and noting if this argument was accepted, any defendant who wishes a change of judge would require no more than a note from his mother).

Because Harris presents no evidence that the undersigned will be unfair and partial, he has failed to show recusal is warranted.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Recusal (Doc. 58) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on December 13, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record